FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 16, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SEAN G.,[1]

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

No. 2:26-cv-136-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff Sean G. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits. Plaintiff claims he was unable to work due to mental impairments between his release from

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

prison in 2020 and when he successfully returned to work in 2022. Based on the evidence of Plaintiff's PTSD symptoms and suicidality during the requested closed period of disability, substantial evidence does not support the ALJ's finding that Plaintiff did not meet a listing, the ALJ's evaluation of the medical opinions, and the ALJ's evaluation of Plaintiff's subjective complaints. These errors impacted the nondisability determination, but it is unclear whether Plaintiff was disabled. Therefore, this matter is remanded for further proceedings.

## I. Background

Plaintiff filed his Title 16 application for benefits on November 9, 2020, alleging disability beginning June 5, 2020, and later requesting a closed period of disability from June 5, 2020, through February 8, 2022.[2] Plaintiff appeared for a hearing before ALJ Deanna Sokolski in

---

[2] Administrative Record (AR) 49–51, 228. Because the application filing date starts the relevant period for Title 16 claims, the ALJ appropriately considered whether Plaintiff was disabled beginning November 9, 2020. *See* AR 740; 20 C.F.R. § 416.335.

November 2023.[3] Plaintiff testified that he spent 16 years in prison, 13 years of which was in solitary confinement, and was released in June 2020.[4] He testified that he had multiple suicide attempts and harmed himself several times while in prison.[5] He said he was diagnosed in prison with bipolar disorder, borderline personality disorder, PTSD, and major depressive disorder.[6]

Plaintiff further testified that after his release from prison, he worked part-time for NAPA Auto Parts for four or five months in 2021, which he had to quit because he kept thinking about running his vehicle off the road.[7] He said he also had anxiety attacks and mood swings that prevented him from regularly attending work.[8] He testified that the first medication he tried after prison made him more

---

[3] AR 43–86.

[4] AR 56–57.

[5] AR 57–58.

[6] AR 59.

[7] AR 55–56, 63.

[8] AR 61.

aggressive and want to kill himself.[9] He said he experienced panic attacks multiple times a week, was traumatized by violence in prison, and had frequent nightmares that would make him more aggressive and prone to avoid others.[10] After leaving NAPA, he tried working as a bouncer, but he testified that he quit because he experienced violence.[11] He then started working at a youth homeless shelter for Volunteers of America in February 2022, which he testified to succeeding at because he received several mental-health accommodations.[12] He testified that at some point he stopped taking medication because counseling and his positive work situation improved his symptoms.[13]

Between his release from prison and starting work at Volunteers of America, Plaintiff testified he would spend his days looking for work, laying in bed, going to the gym or running to get his aggression out,

---

[9] AR 61.

[10] AR 73–74.

[11] AR 64.

[12] AR 64–65.

[13] AR 66–67.

and building and fixing items like furniture.[14] He said he could take care of himself with reminders from his girlfriend for medicine and appointments, but he mostly isolated and avoided other people.[15]

The ALJ subsequently issued a decision finding Plaintiff not disabled.[16] On appeal, this Court granted the parties' stipulated motion for remand on March 6, 2025, directing the Appeals Council to instruct the ALJ to reevaluate step five, seek additional vocational evidence, offer Plaintiff the opportunity for a hearing, and issue a new decision.[17]

On remand, Plaintiff appeared for a hearing before ALJ Stewart Stallings in January 2026.[18] Plaintiff's attorney explained that he was requesting a closed period of disability beginning June 5, 2020, when Plaintiff was released from prison, and ending February 8, 2022, when

---

[14] AR 69–72.

[15] AR 70–71, 73.

[16] AR 18–32. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[17] AR 783–84. E.D. Wash. Case No. 2:24-cv-283-EFS.

[18] AR 761–82.

Plaintiff began work at Volunteers of America.[19] Plaintiff's attorney argued that Plaintiff met Listing 12.08, Personality and impulse-control disorders, or Listing 12.15, Trauma- and stressor-related disorders.[20]

A vocational expert testified that a hypothetical individual of Plaintiff's age, education, and work experience, who could work at the medium exertional level with specific restrictions, could work as a cleaner II, machine packager, or store laborer.[21] The required training for those jobs would range from a short demonstration to a 30-day period.[22] An individual would not be able to complete such training if they could appropriately engage with supervisors or coworkers for only one-third of the time.[23]

---

[19] AR 766.

[20] AR 768–69.

[21] AR 773–75.

[22] AR 773.

[23] AR 778–80.

On February 5, 2026, the ALJ issued a decision finding Plaintiff not disabled.[24] The ALJ found Plaintiff's alleged symptoms were inconsistent with the medical evidence and other evidence.[25] The ALJ considered the third-party statement submitted by Plaintiff's wife.[26] As to the medical opinions, the ALJ found:

- the reviewing opinion of Howard Atkins, PhD, "generally persuasive," and the reviewing opinion of Lisa Hacker, MD, MPH, "partially persuasive."
- the examining opinion of Thomas Genthe, PhD, and Renee Eisenhauer, PhD's opinion reviewing Dr. Genthe's opinion, not persuasive.[27]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity between November 9, 2020, the application date, and

[24] AR 736–54.

[25] AR 746.

[26] AR 751.

[27] AR 749–51.

January 1, 2022, the beginning of the quarter during which Plaintiff started substantial gainful activity.[28]

- Step two: Plaintiff had the medically determinable severe impairments of PTSD, borderline personality disorder, antisocial personality disorder, depressive disorder, ADHD, and anxiety disorder.
- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.
- RFC: Plaintiff had the RFC to:

> perform medium work as defined in 20 CFR 416.967(c). The claimant could lift up to 50 pounds occasionally, lift or carry up to 25 pounds frequently. Would need to avoid ropes and scaffolds, unprotected heights, and dangerous

---

[28] The ALJ articulated this finding by explaining that Title 16 benefits are not payable before the month in which the application was filed, that Plaintiff engaged in substantial gainful activity starting January 1, 2022, and that the rest of the ALJ's decision would address the period during which Plaintiff did not engage in substantial gainful activity. *See* AR 740, 742.

> moving machinery. The claimant is limited to simple tasks; occasional routine judgment defined as being able to make simple work-related decisions; no public interaction; occasional interaction with co-workers and supervisors. Interaction with supervisors may increase for periods of training.

- Step four: Plaintiff could not perform past relevant work.
- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as cleaner II, machine packager, or store laborer.[29]

Plaintiff did not file written exceptions to the ALJ's decision with the Appeals Council and the Appeals Council did not assume jurisdiction on its own, so the ALJ's decision became the Commissioner's final decision.[30] Plaintiff now appeals to district court.[31]

---

[29] AR 742–54.

[30] *See* 20 C.F.R. § 416.1484.

[31] ECF No. 1.

## II. Standard of Review

When considering the ALJ's findings, the court is constrained to the reasons and supporting explanation offered by the ALJ.[32] The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[33] and such error impacted the nondisability determination.[34] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[35]

---

[32] *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[33] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[34] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[35] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028,

## III. Analysis

Plaintiff argues the ALJ committed several errors: (1) the ALJ did not properly evaluate the requested closed period of June 5, 2020, through February 8, 2022, based on the ALJ's discussion of evidence outside this period; (2) the ALJ conducted an inadequate analysis at step three when finding Plaintiff did not meet a listing; (3) the ALJ did not adequately consider the supportability and consistency of the opinions of Dr. Genthe and Dr. Eisenhauer; (4) the ALJ improperly rejected Plaintiff's subjective complaints; and (5) substantial evidence does not support the ALJ's RFC finding that interaction with supervisors may increase for training, so substantial evidence does not support the step-five finding. In response, the Commissioner argues no

---

1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

error occurred and that the ALJ's decision is supported by substantial evidence. As is explained below: (1) the ALJ adequately considered the requested closed period and did not commit any harmful error by considering evidence outside of it; (2) substantial evidence does not support the ALJ's step-three findings, evaluation of the medical opinions, or evaluation of Plaintiff's subjective complaints; and (3) the training-RFC/step-five issue is moot.

## A. Evidence Outside the Requested Closed Period: Plaintiff fails to establish consequential error.

Plaintiff requested a closed period of disability beginning when he was released from prison with mental health issues on June 5, 2020, and ending when he began substantial gainful activity working for Volunteers of America on February 8, 2022.[36] In his decision, the ALJ nevertheless considered whether Plaintiff engaged in substantial gainful activity after the end of the requested closed period and through the date of the decision.[37] Citing earnings records from 2020

---

[36] AR 49–51, 765–66.

[37] AR 742–43.

through 2025, the ALJ found Plaintiff engaged in substantial gainful activity only from January 1, 2022, to October 1, 2023.[38] The ALJ did not specify that working for Volunteers of America was the substantial gainful activity. The ALJ also considered medical evidence from late 2022 through 2025 at step three and when determining Plaintiff's RFC.[39] For all these reasons, Plaintiff argues the ALJ neglected to appropriately consider the requested closed period of disability.

For Title 16 claims, the ALJ has the duty to determine whether the claimant met the definition of disabled at any point from the application filing date through the date of adjudication.[40] The ALJ might find the claimant was disabled as of a definite beginning date but was no longer disabled as of a definite ending date, which the Administration calls a "closed period of disability."[41] The ALJ must

---

[38] AR 742–43.

[39] *E.g.*, AR 748–49.

[40] *See* 20 C.F.R. §§ 416.335, 416.920, 416.994(b).

[41] Program Operations Manual System (POMS) DI 25510.001; *see* 20 C.F.R. § 416.994(b).

consider all relevant evidence in the record when determining whether a claimant is disabled.[42] Evidence from outside the relevant period may be relevant to assess disability during the relevant period.[43]

Here, the ALJ did not neglect to consider the requested closed period of disability. The ALJ identified Plaintiff's request and discussed medical records, medical opinions, and hearing testimony covering the requested closed period.[44] Although the ALJ went further and considered whether Plaintiff was disabled at any point after his substantial gainful activity ended in October 2023, no rule establishes that an ALJ harmfully errs by considering evidence after the claimant's requested ending date that is relevant to disability at any time before the adjudication date. And nothing in the ALJ's decision indicates that, for example, the ALJ credited improvement after 2022 as evidence that Plaintiff was not disabled before 2022. The ALJ, therefore, did not harmfully err.

---

[42] 20 C.F.R. §§ 416.920(a)(3), 416.920b.

[43] *Smith v. Bowen*, 849 F.2d 1222, 1225–26 (9th Cir. 1988).

[44] *See* AR 739, 746–51.

Even so, the ALJ's consideration of evidence after Plaintiff's substantial gainful activity ended appears unnecessary based on Plaintiff's requested closed period. Further, it is unclear in some parts of the ALJ's decision how the ALJ considered evidence after October 2023 to be relevant to Plaintiff's functioning in 2020 and 2021.[45] To avoid unnecessary issues, the Court herein relies only on evidence from the requested closed period or that is relevant to that time period. The ALJ is encouraged to do the same on remand.

[45] *See, e.g.*, AR 744 (citing AR 432, an October 2020 mental-status exam, in favor of Plaintiff having some limitation in adapting/managing himself, but subsequently citing AR 959, 966, 985, 992, and 1022, mental-status notes from April 2024 through September 2025, as evidence that Plaintiff was only mildly limited); AR 751 (string-cite to records spanning from 2020 to 2025 to discount medical opinion from June 2020).

**B. Step Three (Listings): Plaintiff establishes error.**

Plaintiff contends the ALJ failed to provide substantial evidence to support the finding that Plaintiff did not meet Listings 12.04, 12.06, 12.08, 12.11, or 12.15. The Court agrees.

If a claimant meets all of the listing criteria or if his impairments medically equal a listed impairment, he is considered disabled.[46] Medical equivalence will be found if the medical findings are at least of equal medical significance to the required criteria.[47] The ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment."[48] The ALJ need not recite the reasons for his step-three determination under the listings portion of the decision so long as the relevant evidence and underlying findings are discussed in the ALJ's decision.[49]

---

[46] *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

[47] 20 C.F.R. § 416.926(b)(3); *Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990).

[48] *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

[49] *Id*. at 513.

Listings 12.04 (bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), 12.11 (neurodevelopmental disorders), and 12.15 (trauma- and stressor-related disorders) each contain "paragraph B," which provides that the claimant must have "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning": (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.[50]

Here, substantial evidence does not support the ALJ's step-three findings as to the paragraph B criteria of interacting with others and adapting/managing oneself. In finding Plaintiff had only a moderate limitation in interacting with others, the ALJ acknowledged Plaintiff's

---

[50] 20 C.F.R. pt. 404, subpt. P, App. 1, §§ 12.04, 12.06, 12.08, 12.11, 12.15. Listings 12.04, 12.06, and 12.15 contain an alternative "paragraph C" for satisfying the listing, which the Court need not address because substantial evidence does not support the paragraph B findings. *See id.* §§ 12.04, 12.06, 12.15

hearing testimony that he had issues getting along with others; Plaintiff's complaints to mental-health providers that he had anger issues, wanted to be physically violent, and was isolating; and his presentations to mental-health providers of a depressed and irritable mood.[51] But the ALJ stated: "However, on exam the claimant was be [sic] cooperative, engaged, and pleasant, with normal speech, normal behavior, and normal eye contact."[52] The ALJ cited one mental-status exam from the requested closed period.[53]

This single mental-status exam—performed once in the controlled, clinical environment where seemingly the only interaction observed was between Plaintiff and the examiner—is not substantial evidence of Plaintiff's ability to interact with others.[54] The rest of the

---

[51] AR 744 (citing AR 411, 422, 429).

[52] AR 744.

[53] *See* AR 410–11.

[54] *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (Mental health observations must be "interpreted with an awareness that improved functioning while being treated and while limiting

ALJ's decision beyond the listings section also did not provide substantial evidence of only a moderately impaired ability to interact with others.

In explaining the RFC finding, the ALJ summarized medical records from the requested closed period.[55] As evidence in favor of Plaintiff's ability to interact with others, this summary included citation to several mental-status exam findings of normal speech, behavior, and cooperation;[56] an October 2020 therapy note wherein Plaintiff told his therapist he was not isolating as much;[57] a March 2021 therapy note wherein Plaintiff told his therapist he did not let anger "get the best of him" at work;[58] primary care and urgent care

---

environmental stressors does not always mean that a claimant can function effectively in a workplace.").

[55] AR 746–47.

[56] AR 351–52, 357, 362, 410–11.

[57] AR 355.

[58] AR 422.

records noting Plaintiff's normal psychiatric status;[59] and Plaintiff's testimony that he regularly went to the gym where other people were present.

Those records are collectively not substantial evidence of only a moderately impaired ability to interact with others. The week before Plaintiff told his therapist he was not isolating as much, he told his therapist he was planning to put up posters accusing his ex-abuser of being a pedophile.[60] The week after, Plaintiff told his therapist he was going to the gym to keep himself from picking fights with people.[61] Similarly, two weeks before he told his therapist he did not let anger affect him at work, he told his therapist he was paranoid that people were following him because he used to be a white supremacist gang informant for law enforcement.[62] The week after, he told his therapist he was frustrated by homeless people next to his workplace and would

---

[59] *E.g.*, AR 367, 650, 654, 691, 700.

[60] AR 355.

[61] AR 355.

[62] AR 423.

beat up any person who stole his toolbox.[63] Also, the brief, routine notes of Plaintiff's normal psychiatric status at physical-health appointments—*e.g.*, "Psychiatric: Mental Status: normal mood and affect and active and alert"[64]—say little about Plaintiff's social functioning with others at work.[65] Further, although the ALJ reasonably credited to some extent Plaintiff's social capabilities based on his frequent gym attendance, he told his therapist that he went to the gym as an outlet for his aggression against others, which may cut against an ability to interact with others at work.[66]

Additionally, Plaintiff's reports during his mental-health treatment suggest more than a moderate limitation in his ability to

---

[63] AR 422.

[64] AR 691.

[65] *See Garrison*, 759 F.3d at 1017; *Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017) (noting that courts do "not necessarily expect" someone who is not a mental-health professional to document observations about the claimant's mental-health symptoms).

[66] *See* AR 354–55, 359, 419.

interact with others. At various times during his treatment, Plaintiff reported being irritable around other people, avoiding people when he was frustrated, experiencing PTSD symptoms three quarters of the day, not wanting to be around people, having panic attacks at work, avoiding medication that made him more aggressive, cutting himself when experiencing too much stress, and getting in a fight at work.[67]

Next, substantial evidence does not support the ALJ's finding that Plaintiff was only mildly limited in his ability to adapt/manage himself. In making this finding, the ALJ acknowledged that Plaintiff "reported engaging in a history of self-harm" and "on exam, the claimant was found to have poor/impaired insight and judgment."[68] But the ALJ stated: "However, on other exams the claimant was found to have fair, reasonable, and good insight and judgment."[69]

The ALJ reasonably considered Plaintiff's history of self-harm indicative of his ability to adapt and manage himself, but the mental-

---

[67] AR 359–61, 363, 410, 413, 425, 429, 612.

[68] AR 744.

[69] AR 744.

health treatment records of Plaintiff's self-harming behavior and suicidality contradicts finding only a mild impairment. In September 2020, Plaintiff told a therapist of several suicide attempts while in prison and that he still had thoughts of wishing to be dead.[70] That month, he reported feeling suicidal and wanting to drive into a barrier.[71] In November 2020, he cut himself and thought about killing himself but did not cut deep enough.[72] He presented with suicidal ideation in February and March 2021.[73] In March 2021, he said he would probably kill himself if he had a firearm.[74] In April 2021, he said he was still cutting himself and had suicidal ideations.[75] In October 2021, he considered checking himself into the hospital because he was depressed and wanted to "act on impulsive behaviors, such as . . .

---

[70] AR 361.

[71] AR 434.

[72] AR 429.

[73] AR 422, 424.

[74] AR 422.

[75] AR 415–16.

blowing his brains out."[76] And in December 2021, he reported still experiencing suicidal thoughts daily.[77]

The errors in these two paragraph B criteria are not harmless because they caused the step-three determination. Had the ALJ found marked limitations in both criteria, or extreme limitation in one, then paragraph B would have been satisfied. However, it is not clear on this record whether Plaintiff has two marked limitations (as opposed to, for example, a marked limitation in interacting with others and a moderate limitation in adapting/managing oneself) or one extreme limitation. It is also not clear which, if any, of the several mental-disorder listings that contain the same paragraph B would apply. On remand, the ALJ will have the opportunity to reevaluate whether Plaintiff satisfies a listing.

**C. Medical Opinions: Plaintiff establishes error.**

Plaintiff argues the ALJ erred by rejecting Dr. Genthe's examining opinion and Dr. Eisenhauer's reviewing opinion without

---

[76] AR 612.

[77] AR 611.

adequately considering the consistency or supportability of the opinions. The Court agrees.

1. Standard

The ALJ must consider and articulate how persuasive he found each medical opinion and prior administrative medical finding, including whether the medical opinion or finding was consistent with and supported by the record.[78] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[79] Supportability and consistency are the most important factors.[80] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[81]

---

[78] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[79] 20 C.F.R. § 416.920c(c)(1)–(5).

[80] *Id.* § 416.920c(b)(2).

[81] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

2. Thomas Genthe, PhD

On June 11, 2020, Dr. Genthe performed a psychological evaluation of Plaintiff.[82] Dr. Genthe diagnosed Plaintiff with major depressive disorder, PTSD, and ADHD.[83] Dr. Genthe opined that Plaintiff was markedly limited in the following activities: (1) understand, remember, and persist in tasks by following detailed instructions; (2) adapt to changes in a routine work setting; (3) communicate and perform effectively in a work setting; (4) maintain appropriate behavior in a work setting; and (5) complete a normal work day and work week without interruptions from psychologically based symptoms.[84] Based on these mental limitations, Dr. Genthe opined that Plaintiff was "unlikely to function adequately and/or consistently in a work setting until his psychological symptoms have been managed more effectively."[85]

---

[82] AR 336–44.

[83] AR 339, 341.

[84] AR 340.

[85] AR 341.

The ALJ found Dr. Genthe's opinion not persuasive for the following reasons:

> Dr. Genthe rendered his opinion in a checkbox form with no explanation for the ratings he assigned, and while he supported his opinion with a mental status exam, the marked limitations he recommended are not supported by his own exam findings, which were almost entirely normal. Aside from the marked limitation he identified in the claimant's ability to understand, remember, persist in tasks involving detailed instructions, the marked limitations this author identified are also inconsistent with the claimant's full record, which while it does support limiting the claimant to simple tasks, overall supports no more than a moderate limitation in any of the claimant's areas of mental functioning, for which the undersigned has assigned the specific mental residual limitations defined above, based on the claimant's generally normal objective evidence, conservative and minimal course of treatment, and pattern of past reports . . . .[86]

3. Renee Eisenhauer, PhD

On June 16, 2020, Dr. Eisenhauer submitted forms indicating she reviewed Dr. Genthe's opinion and endorsed the same mental functioning limitations as Dr. Genthe.[87]

---

[86] AR 750–51.

[87] AR 712–16.

The ALJ found Dr. Eisenhauer's opinion not persuasive because Dr. Eisenhauer "provided no explanation for the ratings she assigned, which she supported with only [one] source– the unpersuasive and poorly supported opinion of Dr. Genthe."[88] The ALJ also found the opinion inconsistent for the same reasons and based on the same evidence as the analysis of Dr. Genthe's opinion.[89]

4. Analysis

Here, substantial evidence does not support the ALJ's evaluation of Dr. Genthe's and Dr. Eisenhauer's opinions. The ALJ satisfied the regulatory requirement to articulate his consideration of the supportability and consistency of each opinion. The ALJ rationally found Dr. Genthe's marked-limitations opinions to be supported only by Plaintiff's self-reports rather than Dr. Genthe's telephonic exam observations. The ALJ also correctly found that Dr. Eisenhauer's reviewing opinion was supported only by Dr. Genthe's opinion. But

---

[88] AR 751.

[89] AR 751.

substantial evidence does not support finding the opinions unpersuasive based on the overall record.

The evidence discussed above that contradicts the ALJ's step-three findings also contradicts the ALJ's finding that Dr. Genthe's opinions were inconsistent with "generally normal objective evidence" and Plaintiff's "pattern of past reports." As explained, the normal mental-status findings were often brief, recorded observations in a controlled environment during times Plaintiff reported several abnormal experiences in life and work, and were largely unrelated to the five areas of mental functioning opined by Dr. Genthe. Contrary to the ALJ's finding, Dr. Genthe's opinion appears consistent with Plaintiff's pattern of past reports, as Plaintiff consistently updated his therapist with experiencing persistent PTSD symptoms and suicidality that impaired his ability to work throughout the requested closed period. Finally, regardless of whether therapy and medication is "conservative and minimal" mental health treatment, Plaintiff's complaints during such treatment accord with Dr. Genthe's opinion.

**D. Symptom Reports: Plaintiff establishes error.**

Plaintiff argues the ALJ failed to provide valid reasons for discounting his mental symptom reports. The Court agrees.

1. Standard

After finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work.[90] Factors the ALJ may consider when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) objective medical evidence; (2) daily activities; (3) the location, duration, frequency, and intensity of pain or other symptoms; (4) factors that precipitate and aggravate the symptoms; (5) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (6) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;

[90] 20 C.F.R. § 416.929(c).

and (7) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms.[91]

If the ALJ finds inconsistency between the claimant's reported symptoms and the evidence, the ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[92] This requires the ALJ to "show his work" and provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[93]

2. <u>ALJ's reasons and analysis</u>

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his "medically determinable

---

[91] *Id.* § 416.929(c)(2), (3). *See also* 3 Soc. Sec. Law & Prac. § 36:25, Consideration of objective medical evidence (2026).

[92] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022); 20 C.F.R. § 416.929(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7.

[93] *Smartt*, 53 F.4th at 499 (alteration added).

impairments" inconsistent with the "mostly unremarkable" objective evidence, Plaintiff's "minimal and conservative" course of treatment, "the pattern of [Plaintiff's] past recorded statements," and Plaintiff's "engaging in a high level of activities."[94] The ALJ then summarized several medical records from the requested closed period.[95] The ALJ concluded by finding that Plaintiff was "not as bothered by his symptoms as he alleges" because although he testified he did not want to take medication because of a history of side effects, he was recommended medication that he had called helpful in the past.[96]

On this record, the ALJ's reasoning is not clear and convincing and not supported by substantial evidence. The Court has already explained, in context of the step-three and medical-opinions issues, how the objective medical evidence and Plaintiff's pattern of reports during treatment is not substantial evidence to discount Plaintiff's

---

[94] AR 746.

[95] AR 746–47.

[96] AR 749.

reports of work-impacting PTSD symptoms and suicidality. So, the Court turns next to the evidence of Plaintiff's medication and activities.

On this record, discounting Plaintiff's testimony because he stopped taking medication during the requested closed period lacks the power to convince. Plaintiff started taking Prozac in October 2020.[97] He initially reported that Prozac was helpful but stopped taking it in November 2020 after experiencing sexual side effects.[98] He seemingly resumed taking Prozac off and on,[99] but stopped taking it by May 2021 because it was making him more aggressive.[100] Plaintiff was eventually able to return to substantial gainful activity in early 2022 without medication, with Plaintiff crediting counseling without medication and

---

[97] AR 355–56.

[98] AR 354–55.

[99] AR 351, 353 (December 23, 2020: "Hasn't refilled meds so hasn't taken them in 2–2.5 weeks."); AR 351 (January 4, 2021: listing Prozac as a current medication).

[100] AR 410, 413. *See* AR 404–09 (remainder of mental-health treatment records not indicating medication).

accommodations he received at work.[101] In other words, discontinuing medication helped enable Plaintiff to return to work. Also, that Plaintiff initially thought Prozac was helpful does not discredit his later reports that it eventually made him more aggressive, and it was only without Prozac that Plaintiff was able to work.

As to Plaintiff's activities, there is no dispute in the record that Plaintiff could take care of himself at home and frequently went to the gym during the requested closed period. But these activities are not inconsistent with Plaintiff's testimony of work-preclusive *mental* impairments. One could assume that going to the gym involves some amount of socializing, but it is just as possible that Plaintiff avoided others at the gym, and in any event, there is no evidence of Plaintiff's social functioning at the gym. Further, the better evidence of Plaintiff's ability to perform the mental demands of full-time work is his two failed attempts at work during the requested closed period: no evidence refutes Plaintiff's testimony that he had to leave his part-time job at

---

[101] AR 66–67.

NAPA because he had suicidal thoughts and panic attacks,[102] and he had to leave his part-time job as a bouncer because he was involved in a fight.[103]

**E. Training-RFC/Step Five: The issue is moot.**

Finally, Plaintiff argues substantial evidence does not support the ALJ's RFC finding that interaction with supervisors may increase for training, so substantial evidence does not support the step-five finding. As explained, the errors in the ALJ's evaluation of the medical opinions and the subjective complaints impacted the RFC determination. Because substantial evidence does not support the RFC, the issue with respect to the training caveat in the RFC is moot. On remand, the ALJ will have the opportunity to, if necessary, further explain the training caveat in the RFC and solicit further vocational testimony about the training requirements for any step-five jobs.

---

[102] AR 55–56, 63, 74–75.

[103] AR 64, 612.

## IV. Conclusion

Plaintiff establishes the ALJ consequentially erred and substantial evidence does not support the nondisability determination. However, it is not clear on this record whether Plaintiff was disabled during his requested closed period. On remand, the Appeals Council is to instruct the ALJ to:

- consider only evidence from or that is relevant to disability during Plaintiff's requested closed period of disability;
- reevaluate the paragraph B criteria for the mental-disorder listings;
- reevaluate the medical opinions and Plaintiff's testimony in light of Plaintiff's reports to mental-health providers of persistent PTSD symptoms and suicidality during the requested closed period;
- if necessary, explain the basis for any training caveat in the RFC and solicit vocational evidence regarding the training requirements for any jobs identified at step five; and

- offer Plaintiff the opportunity for a new hearing **before a new ALJ**, further develop the record as necessary, conduct the five-step evaluation anew, and issue a new decision.

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.
2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 12**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 16th day of September 2026.

Edward F. Shea

EDWARD F. SHEA
Senior United States District Judge